UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA WALLACE PENNINGTON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 97-B-1949-S |
| | } | |
| CHIEF TED COLLINS, individually | } | |
| and in his capacity as Police Chief of | } | |
| the City of Vernon; OFFICER CECIL | } | |
| CHAFFIN, individually and in his | } | ENTERED |
| capacity as an Officer of the City of | } | |
| Vernon Police Department; THE | } | |
| CITY OF VERNON POLICE | } | JAN 2 9 1998 |
| DEPARTMENT; and THE CITY OF | } | |
| VERNON, | } | |
| | | |
| Defendants. | | |

MEMORANDUM OPINION

Before the court is the motion, filed on behalf of all the defendants, to dismiss plaintiff's claims. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' motion to dismiss is due to be granted.

Plaintiff Teresa Wallace Pennington ("plaintiff") brings claims against the City of Vernon, Alabama, "The City of Vernon Police Department,"[1] Chief Ted Collins, individually and in his capacity as an officer of the City of Vernon Police Department, and Officer Cecil Chaffin, individually and in his capacity as an officer of the City of Vernon Police Department pursuant to 42 U.S.C. § 1983. Plaintiff also asserts pendent claims for "false arrest or

---

[1] There is no indication that the police department is a legal entity separate and distinct from the City itself.

wrongful detention, negligence, gross negligence, harassment and invasion of privacy or wrongful intrusion" under the laws of the State of Alabama.

This case arises out of a series of encounters plaintiff Teresa Wallace Pennington ("plaintiff") claims to have had with Collins, Chaffin, and other unidentified members of the Vernon Police Department. Plaintiff claims that defendants Collins, Chaffin, and others harassed and intimidated her in violation of her rights under the United States Constitution and and "the laws of the State of Alabama." (*See* Compl. ¶¶17, 18, 22.) In addition, she complains of one encounter between her brother and an unidentified Vernon police officer. (Compl. ¶ 12.) The defendants now move to dismiss all of plaintiff's claims on the grounds that the complaint fails to state a claim upon which relief can be granted.

## FACTUAL SUMMARY

Plaintiff alleges that on July 30, 1995, as she was leaving her apartment in Vernon, Chief Collins and Officer Chaffin approached her in a patrol car. (Compl. ¶ 8.) She claims they "shined a bright light" in her face and called her over to the patrol car. *Id.* She then states that one of them asked her if she was having her boyfriend's baby, to which she replied "whose else would it be?" *Id.* At that point, she says Officer Chaffin said, "Why do you want to have Scott's baby when you could have Ted's (referring to Chief Collins) baby?" *Id.* Plaintiff says that she "was left very embarrassed, upset, and offended by the conversation with the defendant officers." *Id.*

Plaintiff next refers to two incidents which she claims took place in August of 1995. First, she says that she was pulled over by Chief Collins who told her that persons at a local hospital pharmacy had told him that plaintiff had a "returned check" at the pharmacy that

2

needed to be picked up or Chief Collins was going to put her in jail the next day. (Compl. ¶ 9.) Plaintiff says that she "checked with the hospital pharmacy and was told that no such check existed." She also states that the individual with whom she spoke at the pharmacy denied having spoken with Chief Collins. *Id.*

Plaintiff claims the next incident occurred approximately two days after the earlier August incident. Plaintiff alleges that Chief Collins came to her home to speak with her concerning the bad check. (Compl. ¶ 10.) She says that Chief Collins then began to question her about her knowledge of anyone who sold drugs. *Id.* She says that this questioning lasted for approximately fifteen to twenty minutes and that she finally suggested that he direct any further questions to her boyfriend. *Id.*

The next incident is alleged to have occurred in September of 1995. Plaintiff says that she was on the way to a local hospital emergency room "with her emergency lights on" to obtain medical care for a friend's child when she passed Chief Collins who was headed in the opposite direction. (Compl. ¶ 11.) Plaintiff claims that she then went by her home in order to pick up her children. *Id.* According to plaintiff, Chief Collins arrived approximately five minutes later and told plaintiff that he was "mad" at her for having told her boyfriend about his questions about drug dealers. *Id.* She says that Chief Collins acknowledged having seen the plaintiff's emergency lights on and that he gave her a speeding ticket. *Id.* Plaintiff was subsequently found guilty of speeding and paid a fine.[2]

Plaintiff alleges that the final two incidents occurred in October of 1995. First,

---

[2] At the hearing on defendants' motion, plaintiff's counsel stipulated to these facts and orally withdrew plaintiff's claim for false arrest.

3

plaintiff alleges that unidentified city police officers stopped her car. (Compl. ¶ 12.) Plaintiff states that her car had tinted windows and was at the time being driven by her brother. *Id.* She says that the officer informed her brother that "people driving the car looked suspicious" and that the car was then searched by a "drug dog." *Id.* The final incident occurred approximately three days later. Plaintiff alleges that "[a]s she was entering her vehicle a patrol car passed. As the car approached the plaintiff, it came to a virtual stop and watched the plaintiff until she was inside of her vehicle." (Compl. ¶ 13.)

## STANDARD OF REVIEW

The court may dismiss an action "for failure of the pleading to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(citations omitted); *accord Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court must take factual allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994)(citation omitted). A complaint should be dismissed, however, if it is clear that no relief could be granted even crediting plaintiff's allegations of the facts.

## DISCUSSION

### I. Plaintiff's Claims Against the City and the Police Department

It is clear that § 1983 liability cannot be imposed on a governmental entity under the doctrine of *respondeat superior* or solely because it employs an individual later found to have deprived a citizen of rights secured by the Constitution. *See Monell v. Department of Human*

4

*Services*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 n.5 (1985). To the contrary, a municipality may be held liable under § 1983 only if it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. This "policy" requirement dictates that a municipality can then be held liable only for "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In short, municipalities cannot be held vicariously liable under § 1983. Rather, it is only where a municipality "under color of some official policy, 'causes' an employee to violate another's constitutional rights," that a municipality may be liable thereunder. *Monell*, 436 U.S. at 692. Furthermore, in order to establish municipal liability, there must be a "direct causal link" between the municipal action and the constitutional deprivation at issue. *City of Canton*, 489 U.S. at 385.

There are two ways to establish this "direct causal link." First, a policy or ordinance officially adopted or promulgated by the governing body may either be unconstitutional or may direct or authorize the deprivation of a person's constitutional rights. *Monell*, 436 U.S. at 690-91; *Pembaur*, 475 U.S. at 482. Second, in the absence of an officially adopted policy or regulation, a municipality can be liable under § 1983 if it can be proved that the municipality was deliberately indifferent to a plaintiff's constitutional rights. *City of Canton*, 489 U.S. at 388.

Plaintiff's only allegations against the City of Vernon and the police department are that they are the employer of Collins and Chaffin. Plaintiff characterizes the facts set out in the complaint as a "continuous, deliberate, and pervasive pattern of harassment and

intimidation by members of the City of Vernon's Police Department, in particular Chief Ted Collins . . ." (Compl. ¶ 17.) However, the incidents described in the complaint do not constitute allegations of an official policy adopted by the City or the police department. Furthermore, the plaintiff does not allege facts showing that the City or the police department were deliberately indifferent to plaintiff's constitutional rights. The court also finds that, although plaintiff alleges that the City is liable "because of its authorization, condonation, and ratification . . . for the acts of . . ." Collins and Chaffin, this cannot serve to impose § 1983 liability on the City and the department because the allegations against the individual defendants fail to state a claim under § 1983. (Compl. ¶ 18.) Because the acts of Collins and Chaffin were not unconstitutional, it therefore follows that the City and the police department cannot be held liable for an alleged official policy ratifying unconstitutional conduct by individual police officers. Thus, plaintiff's § 1983 claims against the City and the department are due to be dismissed.

   The same holds true for plaintiff's pendent state law claims against the City and the police department. *See* Compl. ¶¶ 19-22. Under Alabama law, a municipality is not liable for the intentional torts of its agents. *See Altmyer v. City of Daphne*, 613 So.2d 366, 369 (Ala. 1983). All of plaintiff's pendent claims involve intentional acts. They are described by plaintiff in her complaint as "deliberate and pervasive." (Compl. ¶ 17.) Therefore, because the City and the police department are not liable for the intentional torts of their agents, plaintiff's pendent state law claims against the City and the police department are due to be dismissed.

## II. Plaintiff's Claims Against Collins and Chaffin

Plaintiff alleges that Collins, Chaffin and other members of the police department engaged in a pattern of harassment against her in violation of her constitutional rights. In their brief, defendants argue that the Seventh Circuit case of *Daniels v. Southfort*, 6 F.3d 482 (7th Cir. 1983) directs the conclusion that plaintiff's constitutional claims against the individual police officer defendants are due to be dismissed. Although not binding precedent, *Daniels* involves a similar fact situation, and the court finds it persuasive in evaluating plaintiff's claims against Collins and Chaffin.

In *Daniels*, the plaintiff filed suit alleging that police officers "arrested, stopped, searched, assaulted or intimidated his friends and warned them not to associate with him." *Daniels*, 6 F.3d at 483. By an amendment, he alleged that his own constitutional rights had been violated by his having been falsely arrested a number of times, one of the arrests having been effectuated with excessive force when a police officer broke out a window causing Daniels to be cut. *Id.* He also charged illegal search of his rental car, unreasonable searches of his home in which his property was destroyed, seizure of his puppy, and over one hundred unreasonable stops and frisks during summer basketball games. *Id.* All defendants who appeared filed motions to dismiss for failure to state a claim. The district court granted the motions, and the Seventh Circuit affirmed.

In the *Daniels* opinion, the Seventh Circuit first explains that the plaintiff Daniels had no standing to complain about injuries to his friends. *Id.* at 484. Similarly, in the current case, plaintiff has no standing to complain about any violation of her brother's constitutional rights. *See* Compl. ¶ 12. Therefore, any claims plaintiff asserts on behalf of her brother are

7

due to be dismissed.

The *Daniels* opinion also addressed the plaintiff Daniels' allegations of unconstitutional actions by officers whose identities were not known to Daniels. The Seventh Circuit concluded that allegations involving unnamed officers could not support any relief against the named defendants, and those claims were also due to be dismissed. The same holds true for plaintiff's claims asserted in the complaint against unidentified police officers. Therefore, in the current case, the court finds that plaintiff's claims against unidentified police officers are due to be dismissed.

Plaintiff only alleges one act of harassment by defendant Chaffin. In her complaint, plaintiff alleges that Officer Chaffin made a remark to her concerning her pregnancy which she found offensive. (Compl. ¶ 8.) Although this remark may have been offensive, it does not rise to the level of a constitutional deprivation under § 1983. Moreover, Chaffin is not liable under § 1983 because he is entitled to the qualified immunity defense. Therefore, plaintiff's claims against Chaffin are due to be dismissed.

Turning to plaintiff's specific allegations against Collins, plaintiff complains that Collins stopped plaintiff to ask her questions on three occasions. There is no charge that Collins searched plaintiff or seized anything from her. There is no allegation that she was restrained or prevented from leaving. Furthermore, the allegations in the complaint show that, on two of the three occasions, Collins was questioning plaintiff about suspected illegal activities. Therefore, accepting plaintiff's allegations as true, Chief Collins was acting within the scope of his duties on at least two of three occasions when he allegedly spoke with plaintiff.

The individual police officer defendants claim that they are entitled to the defense of qualified immunity as to plaintiff's § 1983 claims. Defendants cite *Jones v. The City of Dothan, et al.*, 121 F.3d 1456 (11th Cir. 1997) in support of this contention. In *Jones*, a woman telephoned the Dothan police to report that she had been harassed by a man at her place of employment. The individual defendant police officers questioned her and obtained a description of the harasser, who she said she had seen walking toward a Dairy Queen.

The officers went to the Dairy Queen and observed Mr. Jones, who matched the description of the harasser, leaving the restroom. They approached him and led him outside by his arm and belt. Jones asked why he was being restrained, insisted that he had done nothing wrong, and told the officers that he had had a stroke and was on medication. Once outside, the officers slammed Jones against the wall, kicked his legs apart, and searched him. During the search, his pants were torn and his wallet's contents were scattered on the ground. *Id.* at 1458. During the encounter, Jones' wife asked the officers why they were targeting her husband and pled with the officers not to be rough with him because he had just had a stroke. One of the officers ordered her to shut up and go back inside. A few moments later, it was determined that Jones was not the harasser. *Id.* at 1458-59.

Jones and his wife filed suit under § 1983, charging that the police had engaged in an unreasonable search and seizure in violation of the fourth amendment. The District Court denied the officers' claims of qualified immunity, and the Eleventh Circuit reversed. In doing so, the Eleventh Circuit observed that under the qualified immunity doctrine, a plaintiff must show that when the defendant acted, the law was "developed in such a concrete and factually defined context to make it obvious to all reasonable governmental actors in the defendant's

9

place that 'what he is doing violates federal law.'" *Id.* at 1459 (citations omitted). The Eleventh Circuit noted that a qualified immunity analysis is fact specific, the inquiry being whether as of the date of the conduct in question, it was:

> . . . clearly established that it was unconstitutional to pat down a man suspected of repeatedly harassing a woman and chasing her from her place of employment where the officers neither handcuffed nor placed the man in a patrol car, and where the officers expected to remain in the man's presence pending an identification by the victim . . .

*Id.* at 1459-60. Observing that the amount of force which had been used was "minimal" and the injury negligible, the Court concluded that while the officers may have been "rude" the allegations did not "rise to the level of a substantive due process violation." *Id.* at 1461.

The officers' conduct described in *Jones* far surpasses that alleged in the current case. The confrontations described in plaintiff's complaint consist of traffic stops and allegedly harassing language directed at the plaintiff. Such conduct does not rise to the level of physical harassment or detention, as the officer's conduct did in *Jones*. Just as the Eleventh Circuit concluded in *Jones* that the officers were entitled to qualified immunity, this court finds that the individual officer defendants in the current case are entitled to qualified immunity. Specifically, the court cannot conclude that, between July and October of 1995, the law was developed in such a concrete and factually defined manner as to make it obvious to Collins and Chaffin that stopping the plaintiff and questioning her violated federal law. *See Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc). Thus, the § 1983 claims against them are due to be dismissed.

Plaintiff characterizes her pendent state law claims as "false arrest or wrongful detention, negligence, gross negligence, harassment and invasion of privacy or wrongful intrusion under the laws of the State of Alabama." (Compl. ¶ 22.) As noted above, plaintiff was neither arrested nor detained and admits she was found guilty of speeding. Furthermore, all of the acts she has alleged are intentional in nature and would not serve as the basis for a negligence claim. With regard to her claims for harassment and invasion of privacy, the injury in an invasion of privacy claim is similar to that made in an outrage claim. To evaluate an outrage claim, the court asks whether the conduct was "extreme and outrageous," while when considering an invasion of privacy claim, the determination is whether defendant has made a wrongful intrusion into one's private activities in such a manner so as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Hogin v. Cunningham*, 533 So.2d 525, 531 (Ala. 1992). Furthermore, "the 'reasonable person' inquiry is a question of law." *Logan v. Sears Roebuck & Co.*, 466 So.2d 121, 123 (Ala. 1985). In addition, "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," are not actionable." *Mooney v. HWWCE*, 684 So.2d 1340, 1343 (Ala. Civ. App. 1996), quoting *American Road Service Co. v. Inmon*, 394 So.2d 361, 364-65 (Ala. 1980)(citations omitted). The court finds that the actions of Collins and Chaffin of which plaintiff complains do not rise to the level required to be actionable under Alabama law. Rather, the encounters described by plaintiff, to the extent that they do not constitute legitimate police activities, consist of mere insults and annoyances. Therefore, the court finds that plaintiff's complaint fails to state a claim under Alabama law.

## CONCLUSION

Based upon the foregoing, the court is of the opinion that the defendants' motion to dismiss as to all of plaintiff's claims is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 29th day of January, 1998.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge